THE STATE, CHARLES F. STAFFORD, PROSECUTOR, v. WILLIAM S. MILLS AND MICHAEL GAISER, DEFENDANT.

THE STATE, CHARLES F. STAFFORD, PROSECUTOR, v. WILLIAM S. MILLS AND LAWRENCE FARRELL, DEFENDANT.

An absconding debtor is one who, with intent to defeat or delay the demands of his creditors, conceals or withdraws himself from his usual place of residence beyond the reach of process. It is not necessary that he depart from the limits of the state in which he has resided. If one eludes his creditors, then he intends to delay and defeat them, and he can be held to the intent of evading process, and all the law requires, in order to constitute an absconding debtor, is that he shall put himself in such a position that he can and does successfully evade the service of process. It may be by concealment in his own house. It may be by going from place to place so quickly as to evade meeting with service of process.

On *certiorari.*

Argued at November Term, 1894, before Justices DIXON, MAGIE and LIPPINCOTT.

For the prosecutor, *A. E. Stockwell* and *Linton Satterthwait.*

For the defendants, *Woodbury D. Holt, John Caminade* and *John T. Temple.*

The opinion of the court was delivered by

LIPPINCOTT, J. These causes are in this court, on *certiorari,* for the review of the judgments therein of William S.

Mills, Esq., one of the justices of the peace of the county of Mercer. Two writs of attachment were issued against Charles F. Stafford, the prosecutor, in suits in which Michael Gaiser and Lawrence Farrell were plaintiffs respectively, on the ground that Stafford was an absconding debtor. Motions were made, on affidavits before the justices, to quash these writs, which motions were denied. These writs are to review the judgment of the justice on this motion to quash.

The affidavit in each case, upon which the writ of attachment was issued, states that the affiant verily believes that Stafford absconds from his creditors, and that he is not, to the knowledge or belief of the affiant, resident in this state at that time. The affidavits of the prosecutor, the defendant, against whom the attachments were issued, upon which the motions to quash were made, were to the effect that the prosecutor was not an absconding debtor, and that he was, at the time of the issue and service of the writs, a resident of this state.

The hearing on these motions before the justice was upon the same facts as in the case of State, Stafford, pros., *v.* William S. Mills and Alexander V. Manning et al., decided at the present term of this court. The justice having certified that he was unable to make return of the facts before him, on the motion to quash, he having made no memoranda of the same, rules were granted in all the causes to take evidence of the facts appearing before the justice, to be used on the argument of these writs of *certiorari.* The evidence under these rules and the facts are now before this court, and are the same as in the case to which reference has been made. In that case the question was whether, at the time of the issuance and service of the writ of attachment, Stafford was a non-resident debtor, and this court decided that he was not, but that at the time he was a resident of this state, and therefore reversed the holding of the justice on the motion to quash.

The proceedings in the cases of Gaiser and Farrell were against Stafford as an absconding debtor, and in this respect differ from the case of Manning, which was against him as a non-resident debtor. In summarizing the evidence, the court

finds the facts to be that before the issuance of these writs of attachment, on December 7th and December 9th, 1893, Stafford had been the tenant of Michael Gaiser, one of the defendants herein, conducting a billiard saloon adjoining and connected with the bar-room of Gaiser; he was indebted to Gaiser for quite large arrears of rent for the billiard-room, and for $100 for money Gaiser had been obliged to pay for him as an endorser of his note. Gaiser was pressing him for payment. He also was indebted to Farrell. It is in proof, undisputed, that for about two weeks prior to December 6th, 1893, he had absented himself from the business place at this billiard-room, and left his brother and a boy in charge. He was very little at his place during this time, if he was there at all. It was given out by his brother that he was sick at his wife's house in Philadelphia. The facts appear to be that he was in his own house, in Lamberton street, or at his brother's house, in Centre street, where he lived after he gave up his own house in Lamberton street. On December 6th, 1893, Gaiser issued a distraint against the personal property of the prosecutor in his billiard-room. On that day, or the days following, Stafford appears to have been mostly in his house in Lamberton street, packing up his household goods to be sent to Philadelphia, to his wife, who kept, and had for a long time previous kept, a boarding-house in that city, but he addressed the goods when packed, and sent them, to an entirely different person and to an address not that of his wife. He was sought for at his residence and was not found there. From the evidence it can be gathered that he was there, but concealed from his creditors; the bell of his residence was rung, but no answer was received. From the evidence in the case, the conclusion is that he was in Trenton most of the time, but avoiding his creditors and concealing himself. He undoubtedly was a portion of the time in Philadelphia, at his wife's house, but with no idea of taking up his residence there. After breaking up, as the evidence shows he did, his residence in Lamberton street, some time about December 6th to 8th, he engaged board at his brother's house in Centre street, and

lived there, but it is concluded that he concealed that fact from the public and from those who had claims against him. The constable, who was required to serve the statutory notice of the distraint, was unable to find him. An officer went to his residence in Lamberton street to serve a summons on him at the suit of Farrell, but could not gain admittance, and his goods had been sent to the steamboat landing, where they were attached under a writ issued against him as an absconding debtor. There is evidence in this case that he denied his identity to an officer at the steamboat landing to which the household goods had been sent to be shipped to Philadelphia. The conclusion reached by the court is, that during all this period, up to and beyond the time of the issuing these writs of attachment, he was residing in the city of Trenton, either at his own house or at the house of his brother, but that he was going from place to place and had concealed himself in one place or the other, and had withdrawn himself in such a manner that it would have been extremely difficult to ascertain his whereabouts by any reasonable degree of inquiry or search, and that during this period it would have been a difficult task to have made service of any personal process on him.

Under these facts, upon an application of proper principles of law, it is difficult to conceive him to be anything else than an absconding debtor at the time of the issuance and service of these writs of attachment. He was secretly sending away household goods apparently his own. He had, a few days before, recorded bills of sale of this very property, through an intermediary, to his wife, and during the process of the preparation for their removal his house was closed to the admittance of anyone. The evidence leads to the conclusion that he was secreting himself to elude his creditors, and during this time I do not think that it can be contended that Stafford could have been served with summons by the exercise of any reasonable inquiry and diligence. Attachment is the only method of bringing a debtor into court when he cannot be

served with summons.   *McFadden* v. *Whitney*, 22 *Vroom* 391, 395.

It was held by Mr. Justice Depue, at Circuit, that where the defendant was actually at home, but permitted members of his family to state that he had gone to Philadelphia, and was going from there to Massachusetts, the writ should be sustained against him as an absconding debtor; that it was the pretence of having gone, when actually present, which made the concealment sufficient to sustain the writ. *Lesage* v. *Schmidt*, 10 *N. J. L. J.* 10. Where it was shown that a defendant had left the town clandestinely at midnight, and done things which exhibited an intention to conceal himself, the writ would be sustained against him as an absconding debtor. *Stone* v. *Stites*, 14 *Id.* 25.

An absconding debtor is one who, with intent to defeat or delay the demands of his creditors, conceals or withdraws himself from his usual place of residence beyond the reach of process. It is not necessary that he depart from the limits of the state in which he has resided. A great many expressions are used in judicial discussions of what facts constitute one an absconding debtor, and many illustrations are found in the books. But in this, as in many other matters, each case must depend upon its own peculiar distinctive facts and circumstances, and the intent can be drawn from the acts of the defendant. One is naturally held to have intended the results of his own acts. Now, if one eludes his creditors he intends to defeat or delay them. If one eludes his creditors, then he can be held to the intent of evading process, and all the law requires in order to constitute an absconding debtor is that he shall put himself in such a position that he can and does successfully evade the service of process. In one case it may be by concealment in his own house. It may consist in going from place to place so quickly as to evade meeting with service of process anywhere. There is a limit to the creditors' search for him, else he might never be served with process, and no attachment would ever be sustained. The creditor is bound to ascertain, if he can do so by all natural ordinary

means at hand, his debtor's whereabouts, in order to serve him with process, but this obligation has its limits in reason and common sense. A debtor may, by a careful watch of the action of his creditors, or by information from others, elude his creditors for an indefinite time, and yet he might produce proof of having been seen in so many places that it would seem reasonable that service of process could be made. So it can be perceived that concealment with intent to defeat or delay his creditors has a relative significance. It must depend upon the facts of each case, and they must be such, and of such probative force and effect, that the court can conclude that the debtor was eluding the service of process; that he intended to do it, and that his conduct or concealment was such as to lead his creditors to the natural belief that he absconds, and when this state of affairs exists the debtor becomes subject to the writ of attachment as an absconding debtor.

While this is an extraordinary writ and only to be invoked when the debtor is, as an absconding or absent debtor, beyond the reach of the ordinary process of the court, yet the act of the legislature authorizing the writ is to be beneficially construed in order to detect fraud, advance justice and benefit the creditor, and its purposes are not to be thwarted by any secret resolves or intentions of the debtor on this subject. He is to be judged by ordinary and obvious *indicia*. *Baldwin* v. *Flagg*, 14 *Vroom* 495, 498.

To abscond, therefore, in a legal sense, means to elude, to hide, to conceal one's self clandestinely with intent to avoid legal process. Concealment is but a phase of absconding. It is with the purpose of defeating or delaying creditors *by avoiding* service of process. *Bennett* v. *Avant*, 2 *Sneed* (*Tenn.*) 152; *Gibson* v. *McLaughlin*, 1 *Browne* 292; *Drake Att.* (*6th ed.*), §§ 48, 53. If a person depart from his usual residence, or remain absent therefrom or conceal himself in his home, so that he cannot be served with process, with intent to avoid service of process, or to delay or defraud his creditors, he is an absconding debtor. *Ives* v. *Curtiss*, 2 *Root* 133.

The conduct of the defendant in attachment, as shown by the evidence, is such as to justify the conclusion that, at the time of the issuance and service of the writ, he was an absconding debtor within the meaning of the Attachment act providing relief in such cases.

Presumptively the facts presented here by the evidence taken under the rule are only such as were presented to the justice, for it is only the facts upon which he based his determination which are in review now, and we think, therefore, his conclusions were justified by the proofs before him.

The judgment of the justice must be affirmed and the writs of attachment sustained, with costs in each case, against the prosecutor, including only one-third of the costs of taking and printing the testimony in each case.