CHARLES HOLDORF, Appellee, v. ANNIE HOLDORF, Appellant.

**EXEMPTIONS:** Persons Entitled—Abandoned Wife and Family—Purchaser from Husband. Where a wife and family have been abandoned by the husband and father, the wife may hold such property as is exempt from execution under Section 4008, Code, 1897, as against a purchaser from the husband. Sections 3158, 4016, Code, 1897.

EVANS, J., concurs specially.

SALINGER and STEVENS, JJ., dissent.

*Appeal from Pottawattamie District Court.*—J. B. ROCKA-FELLOW, Judge.

MARCH 17, 1919.

REHEARING DENIED JULY 10, 1919.

ACTION at law to recover the possession of personal property. The court having sustained a demurrer to defendant's answer, she elected to stand on her pleading, and

from the judgment entered against her, she appeals.—*Reversed.*

*Turner & Cullison* and *G. C. Wyland,* for appellant.

*Preston & Dillinger,* for appellee.

WEAVER, J.—In his petition, the plaintiff claims the possession of certain farm implements and live stock, under a bill of sale made to him by the defendant's husband, who is the son of plaintiff.

In her answer, the defendant alleges that, in March, 1916, she was living with her husband at their home in said county; that the property now in controversy was then held and owned by him, and was exempt from execution under the statutes of this state; that, on or about the date named, her husband deserted her and the infant child of their marriage, and removed to Colorado, leaving her in the possession and control of said exempt property; that, after said desertion, he entered into a conspiracy with the plaintiff to cheat and defraud her out of her rights in said property, and deprive her of her right to use and subject said property to the purposes of her maintenance and support, and in furtherance of such conspiracy, her husband made to his father the bill of sale under which the latter now claims title to and possession of the several items of property described in the petition. In what is called the fifth subdivision of the answer, she further alleged that the bill of sale was obtained from her husband by fraud and coercion, and without consideration.

The demurrer to the answer is to the effect that the facts pleaded constitute no defense to the plaintiff's claim. This position was sustained by the court as to all of the answer except the fifth subdivision, above mentioned.

Stated briefly, the proposition asserted by the appellee is that, although the property was exempt from execution in

the hands of appellant's husband, and therefore not liable to be seized and subjected to the claims of his creditors, this did not take away or limit his right as owner to sell or dispose of it; and that, in so doing, even after he had deserted his family, he did his wife no legal wrong, and she did not become thereby entitled to hold the property as against any person to whom he might transfer it.

The statutory exemptions from executions (Code Sections 4008 et seq.) designate certain property of the debtor who is a resident of the state and head of a family. This provision is made, not for the benefit of the debtor alone, but also for the protection of the family which it is his duty to support; and this court has from the outset held it to be its duty to construe the law liberally, to effectuate the humane intent and purpose of its enactment. Generally speaking, the exempt character of the property does not destroy or interfere with the right of the debtor to sell or dispose of it, the presumption being that, so long as he remains the actual head of the family, with his wife and infant children, he will make proper provision for their support; or, if the property sold be necessary for their support, he will replace it. Unfortunately, however, there are some men with so little regard for their marital and parental obligations that they will desert their wives and children and leave them to carry on an unaided struggle for existence. It may perhaps be justly said that our statute has not made adequate provision for the protection of a family thus wickedly abandoned, but there has been at least some attempt to meet that need. In Code Section 4016 we find the following:

"When a debtor absconds and leaves his family, such property as is exempt to him under this chapter shall be exempt in the hands of his wife and children, or either of them."

There is another provision, whereby, if a husband abandons his wife, or is cast into prison, she may, after one year, secure an order of court, to manage, control, sell, or incumber any or all of his property upon proper showing (Code Section 3158) ; but this right has no special reference to the exempt character of such property.

Under the foregoing statutes, it has been held that a wife abandoned by her husband may not only hold the exempt property left by him in her possession against the claims of his creditors, but that she may sell it for the support of herself and family, and vest the purchaser with a good title thereto. *Rawson v. Spangler,* 62 Iowa 59; *Waugh v. Bridgeford,* 69 Iowa 334. These decisions have stood unchallenged nearly 40 years, and, unless we are prepared now to overrule them, they are to be regarded as reflecting the established law of this state. It is true that, in each of these cases, the party against whom the decision was made was a creditor of the husband; but the issue was between the creditor and the person who had bought the property from the deserted wife, and the question tried and decided was whether such sale had the effect to vest the purchaser with title, and this was answered in the affirmative. If, therefore, upon desertion by the husband, the wife is clothed with power to sell the exempt property for her support, then, even if it may be said that the law does not work any transfer of title from him to her, but simply gives her the right to use it or to sell it, and to use the proceeds as a means of the support which it was his duty to furnish, it follows, of necessity, that the property is charged with or impressed with that liability in her hands, and she has the right to its possession for that purpose, not only against his creditors, but also against the recreant husband himself. If this be not so, the rights which the statute has provided for her, and which we have recognized and upheld,

are reduced to the merest shadow.  Under such an interpretation of the statute, a heartless husband may run away from his wife and infant children, and not only deny them the care and support which it is his duty to give, but may also thereafter, and while persisting in his desertion, rob them of the benefit of the exempt property left in their hands, by selling it to a stranger, or by the nominal transfer of the title to a friend or relative.  Nay, more, if he may do this, he may dispose of it by voluntary gift to a paramour or other confederate, who may enter the house, strip it to its last item of furniture, and turn the helpless family adrift to starve, unless relieved as objects of public or private charity; and the courts called upon to sit in judgment on such a transaction must uphold it as lawful. It is impossible that the legislature intended any such result.  It is no answer to say that, had the husband not deserted his family, he could have sold the exempt property without his wife's consent; for, as we have already said, so long as he remains with the family, he is its head, and it will be presumed that he will give it his care and support. It is only when he abandons his home and family that the right of the wife to possess and control the exempt property and subject it to her support attaches, and when such right does attach, the right of the husband to deprive her of it ceases.  The unlimited right of the absconding husband to rob his deserted wife and child of their means of support, by selling, giving away, or wasting the exempt property left in the wife's possession, and the right of the wife to hold the property and sell or use it for her support, cannot coexist.  The right so given the wife necessarily excludes and negatives the right of the husband to defeat it.

The demurrer to the answer should have been overruled. The judgment appealed from is, therefore,—*Reversed.*

EVANS, J. (concurring).  I concur fully in the majori-

ty opinion. I desire to add a word, however, with a view of italicizing particular terms of the statute under consideration. It provides:

"When a debtor absconds *and leaves his family,* such property as is exempt to him under this chapter shall be exempt *in the hands of his wife* and children, or either of them."

The words above italicized furnish their own emphasis. Their fair implication is that, when an absconding debtor "leaves his family," his dominion and trusteeship of exempt property ceases instanter. By the same process, such exempt property is deemed to be "in the hands of his wife." If such property is deemed in the hands of the wife, it cannot be in the hands of the absconding husband. How can it be *"exempt* in the hands of his wife" unless the *dominion* is likewise in the hands of his wife? An exemption to the wife in property over which her absconding husband, and not she, has absolute dominion, would be a contradiction in terms. If she has no right to the property, she can have no exemption in it. It is impossible to give any substance to the exemption provided in this statute for the benefit of wife and children, unless it be held that, as a matter of law, the dominion and trusteeship of the exempt property passes from the absconding husband to the deserted wife and children. Such a holding is consistent in principle with our previous construction of exemption statutes. To hold that a nondeserting husband may not incumber exempt property for the benefit of a creditor without the written consent of his wife, and yet hold that a deserting husband who acts in hostility to his family may give away or sell such exempt property for his own exclusive use, in attempted violation of his trusteeship for his family as to such exempt property, would be an incongruity, indeed. To so construe this section is to reduce the exemption therein provided to a nullity.

We must assume that the purpose of this statute was to save exemption to wife and family, notwithstanding the desertion of the husband. It should be construed, therefore, as giving the substance of exemption, and not the mere shadow of it. I recognize a certain force of logic in the dissenting argument, predicated as it is upon the fact that Section 4016 is a part of the Code chapter on executions, and deals primarily with the relative rights of creditors and debtors, rather than with the relative rights of husband and wife. But even logic apparently good sometimes leads to absurdity. In this case, it destroys the statute which it construes. It was with perfection of logic that Dr. Holmes, at the end of a hundred years to a day, made a pile of dust from the One Hoss Shay.

"Logic is logic,—that's all I say."

LADD, C. J., and GAYNOR, J., concur in both of the foregoing opinions.

STEVENS, J. (dissenting). The grounds upon which the decision of the majority is based are not very clear to me. Apparently, the thought of the writer is that the legislature, by the enactment of statutes exempting from execution sale certain personal property of the debtor who is the head of a family, intended that same should be so construed as to operate as a denial of the authority of the husband to sell the same, under certain conditions. The statutes which are material to my discussion of this case are as follows:

"Sec. 4008. If the debtor is a resident of this state and the head of a family, he may hold exempt from execution the following property: * * *."

"Sec. 4016. When a debtor *absconds* and leaves his family, such property as is exempt to him under this chapter shall be exempt in the hands of his wife and children. or either of them."

Code Section 4014 provides, in substance, that, where

the debtor is the head of a family, and has started to leave the state, he shall have exempt only the ordinary wearing apparel of himself and family, and property in addition thereto, to be selected by him, not exceeding $75.

Code Section 3878, relating to attachments, is as follows:

"The petition which asks an attachment must in all cases be sworn to. It must state one or more of the following grounds: * * *

"6. That he has absconded, so that the ordinary process cannot be served upon him."

The word "abscond," as used in Section 4016, was defined by this court in *Malvin v. Christoph*, 54 Iowa 562, as follows:

" 'To go in a clandestine manner out of the jurisdiction of the courts, or to lie concealed in order to avoid their process.' "

In the course of the opinion, the court said:

"A debtor may abscond and conceal himself from his creditors, with the intention of avoiding the service of judicial writs, notices, or other process, and be to all intents what the law denominates an absconding debtor, and yet such absence may be with the knowledge and consent of the wife. The statute of exemptions gives to the head of a family, for the benefit of the family, certain property as exempt from execution. If he be an absconding debtor, the law authorizes the wife or children to claim the exemption, *not as the owners of the property, but for him for the benefit of his family*. Now, it is wholly immaterial whether the husband absconds with the knowledge or consent of the wife or not."

"To 'abscond,' therefore, in a legal sense, means to elude; to hide; to conceal one's self clandestinely, with intent to avoid legal process. Concealment is but a phase of

absconding. It is with the purpose of defeating or delaying creditors by *avoiding* service of process. *Bennett v. Avant,* 2 Sneed (Tenn.) 152; *Gibson v. McLaughlin,* 1 Browne 292; Drake Att. (6th Ed.) Secs. 48, 53. If a person depart from his usual residence, or remain absent therefrom, or conceal himself in his home, so that he cannot be served with process, with intent to avoid service of process, or to delay or defraud his creditors, he is an absconding debtor." *Stafford v. Mills,* 57 N. J. L. 574, 579 (32 Atl. 7, 19).

Exemption statutes, designed to prevent creditors from depriving a debtor or his family of the necessary means of earning a livelihood, and causing them to become charges on the public, are, of course, well understood. Such statutes, so far as I am informed, have never been construed as imposing a limitation upon the authority of the owner to sell exempt property. Certain other statutes have been enacted in this state for that purpose. Code Section 2906 provides:

" * * * No incumbrance of personal property which may be held exempt from execution by the head of a family, if a resident of this state, under the provisions of law, shall be of any validity as to such exempt property only, unless the same be by written instrument, and unless the husband and wife, if both be living, concur in and sign the same joint instrument."

Section 3047 of the 1913 Supplement prohibits the husband from assigning exempt wages, except by an instrument in writing, signed jointly by himself and wife. Section 4016, quoted above, preserves the exempt character of personal property in the hands of the wife and children, when the husband has absconded without taking the family with him.

The opinion of the majority frequently uses the words "abandoned" and "deserted" interchangeably with the

word "absconded." They do not, however, possess the same meaning. The husband, it is true, may abscond,—that is, conceal himself so that process cannot be served upon him, —and at the same time abandon or desert his family; but the word "absconded," as used in Section 4016, is, in my judgment, used in its usual sense, and should not be construed as having the same meaning as "abandonment" or "desertion."

The majority emphasizes our holding in *Rawson & Rice v. Spangler,* 62 Iowa 59, and *Waugh v. Bridgeford,* 69 Iowa 334, and seeks to apply the same to the facts of this case. It seems to me that the citation is unfortunate for the majority. The property involved in *Rawson & Rice v. Spangler* was a cow, which the wife, who had been abandoned by her husband, sold, and which a creditor of the husband's caused to be seized on execution. The opinion gives no weight whatever to the fact that the property was exempt. It appears that the wife and children were left with but a small amount of property, which had become well exhausted when the cow was sold. The basis of the court's holding is stated as follows:

"We come, then, to the question whether, the circumstances being such as above set forth, Mrs. Perkins could be deemed to have authority to sell. The wife's implied agency to act for her husband differs under different circumstances. She may ordinarily contract for domestic supplies, and, if abandoned by her husband without her fault, she may always pledge his credit for necessaries. If left by him in the management of his business, she may make the contracts reasonably incident to its management. In the case at bar, the wife was left by her husband to provide for the family as best she could, out of such means of support as they had. One of the means of support was the cow, which was not useful to her, because she was vicious. We think it clear

that, under the circumstances, she had implied authority to sell her."

The plaintiff in *Waugh v. Bridgeford*, supra, purchased a blooded cow from Mrs. Wolf, whose husband had absconded. The plaintiff, a creditor of the husband's, caused the animal to be seized on a writ of attachment, and plaintiff brings this action in replevin for the possession thereof. The court held that, as the property was exempt, under Section 3078 (4016), in the hands of the wife, plaintiff could not recover. Incidentally, the court referred to the right of the wife to dispose of exempt property for the purpose of providing necessaries for herself and family, saying:

"It is obvious that the cow could only be used for her benefit by selling it, and it may be that receiving half the animal's value in cash, and obtaining credit for her husband for the balance, would be more beneficial to the wife than any other disposition she could make of the property. At all events, she was authorized to exercise her judgment in the matter, and her husband's creditors cannot complain, for in no event could they reach the property. She possessed the same rights to the property, and the same authority to dispose of it, as was held by her husband when it was in his hands. We need not inquire whether the right and authority were held as the agent of her husband. That she held the right and authority to dispose of the cow cannot be doubted. It would not serve to elucidate the rule we adopt to determine whether she is to be regarded as the agent of the husband. In support of our conclusions, see *Malvin v. Christoph*, 54 Iowa 562; *Rawson & Rice v. Spangler*, 62 Iowa 59."

The most that can be claimed for the holding of the court in the above cases is that creditors cannot complain if the wife, whose husband has absconded, sells exempt personal property; and that the wife has implied authority

from her husband to sell and convey the same and pass a good title to the purchaser. The right of a bona-fide purchaser of exempt property from the husband, after he has absconded and left his wife and children, was in no sense involved, and in neither of the cases was the question considered by the court from the standpoint of a controversy between such purchaser and the wife or minor children.

The implied authority of the wife to dispose of exempt personal property as a means of procuring necessaries for herself and minor children in no sense amounts to a denial of the right of the husband, who is the owner thereof, also to sell it. If the authority of the wife rests upon the doctrine of implied agency, clearly the authority of such agent to sell would not be exclusive, or operate as denial of the authority of the principal to do likewise.

In *Grover v. Younie*, 110 Iowa 446, in which Mr. Justice Deemer filed a somewhat exhaustive dissent, the court limited the application of Code Section 2906 to the incumbrance of exempt personal property, and clearly recognized the right of the husband to sell the same. This right is also conceded by the writer of the dissenting opinion. See, also, *Dowling & Allgood v. Wood*, 125 Iowa 244. The court, in *Grover v. Younie*, said:

"The statute confers on the wife no interest other than she had in her husband's property, nor does it deprive him of the right of selecting that which shall be held as exempt. If he err in judgment or by design, the law gives her no remedy. If, under the construction given, he might mortgage all save a worthless team, as suggested by the appellee, under that contended for he might also make such a choice thereafter. Under either he may deprive his family of the benefit of exemptions by sale or gift, or by failure to select property when required to do so by an officer about to make a levy. The object of this statute is not to wrest from the

head of the family the control of exempt property, but to somewhat restrict it, by requiring the concurrence of the wife before it can be incumbered."

Section 4016 does not, in express terms, nor, in my judgment, by necessary implication, impose any restriction whatever upon the right or authority of the husband who has absconded and left his family, to sell his exempt property. The only statutes which in any way restrict the power of a husband to deal with his exempt personal property are Sections 2906 and 3047, above referred to. No other statutory restriction has been placed upon the right or authority of the husband by the legislature of this state, whether he has absconded or not, to control or deal with exempt personal property.

The sole purpose, scope, and effect of Section 4016 is to render certain personal property exempt to a debtor who is the head of a family, also exempt in the hands of his wife and children, when he has absconded, leaving the same in the possession thereof.

Exemption statutes are not designed or intended to protect the family from the willful acts of the husband, but relate solely to controversies between the husband who is a debtor, or his wife and family, after he has absconded, and his creditors. We have held that the debtor may waive his right to exemption (*Grover v. Younie*, supra), and that he may estop himself from subsequently asserting his exemption as to wages (*Dowling & Allgood v. Wood*, 125 Iowa 244). In other words, the only restrictions upon the power of the husband to sell or otherwise dispose of exempt property which we have ever recognized are the specific restrictions imposed thereon by Sections 2906 and 3047.

The emphasis given the words "in the hands of his wife" arises from what seems to me a clear misapprehension of the meaning of the statute. The wife does not acquire title

to exempt property because the same is left in her hands, but the exemption given to the husband as the head of the family, by this provision of the statute, continues in favor of the wife and children when the husband absconds and leaves exempt property in their possession. The exemption is from the debts of the husband, and the sole thought of the legislature evidently was that, as exemption statutes are primarily for the benefit of the family, exempt property "in the hands of the wife" should not be subject to execution and sale for the absconding husband's debts.

It is also urged that the statutes in question should be construed as a prohibition upon the right of the husband to sell exempt property in the hands of the wife, because he cannot incumber same without the consent of the wife. The answer to this contention is that the statute specifically prohibits the husband from incumbering exempt personal property, except by an instrument in writing, signed jointly by himself and wife; whereas there is no statute prohibiting the husband from selling such property.

This dissent is not prompted by any sort of sympathy for the husband, but by a feeling that the majority has gone far beyond the legitimate authority of the court to construe statutes, and assumed legislative functions. The arguments advanced would no doubt be persuasive, if made before a legislative body, and I most heartily commend the enactment of a statute by the proper department that will carry out the thought of the majority.

In my opinion, the trial court was right, and I would affirm.

SALINGER, J.—I concur in the dissent, and add that the majority ignores what was held against dissent in *Schooley v. Schooley,* 184 Iowa 835. In that case, it overlooked the object of exemption laws. In the present case, it adds to the statute, to effectuate the object of such laws.