IMA BRAYMAN, Appellee, v. WILLIAM BRAYMAN, Appellant.

No. 41746.

APRIL 4, 1933.

L. H. Mattox, for appellant.

J. A. Hayward and Stipe, Davidson & Davidson, for appellee.

EVANS, J.—We have no argument for the appellee; nor any appearance for any purpose. We are therefore under the burden of discovering the grounds of her recovery and of ascertaining the validity thereof. The plaintiff is the daughter-in-law of the defendant. Her husband is Boyd Brayman. On March 5, 1930, Boyd was arrested upon a charge of felony and was confined in jail at Clarinda until March 8, when with the assistance of his father he gave bail for his appearance in the district court. He expected to be indicted, and intended to plead guilty to the indictment. This meant a probable term in the penitentiary. On the same date, March 8, Boyd asked his father to buy from him certain of his property and to apply the proceeds to the payment of certain of his debts. To this request the father assented. The property offered comprised four cows, four calves, fifteen pigs, a windmill, some fencing, a mortgaged motortruck, and a small quantity of hay and corn on hand. This comprised virtually all the property Boyd had, except his household furniture and a car and a mare and colt. All of the last-named property was left in the hands of the wife. Prices were agreed on between father and son, which were fully equal to values, as disclosed in the evidence. Such property was then and there delivered. The proceeds as agreed on were approximately $700. The amount of the debts, which the father immediately paid, amounted to more than $900. On March 26, Boyd was duly convicted in the district court and sentenced to the penitentiary for an indeterminate period. One year later this suit was instituted. In the first instance the theory of the suit was predicated upon section 10455. At the close of the evidence the plaintiff amended her petition by adding a second count thereto. The theory of this count appeared to be predicated upon section 11758 of the Code. The trial court dismissed the first count of the petition. We have therefore no occasion to consider it. The second count of the petition charged:

(1) That the defendant took the property of Boyd of his own volition and without any right or authority so to do;

(2) That he took said property pursuant to conspiracy between him and Boyd, which conspiracy was directed against the plaintiff and done with intent to deprive her of the benefits of exempt property;

(3) That the defendant coerced Boyd and took the property from him by duress and against his consent.

The court, at the close of the evidence, withdrew from the con-

sideration of the jury all allegations of conspiracy or duress. The only ground of recovery recognized by the court as sufficient to go to the jury, and the only purported ground of recovery submitted by the court to the jury, was the question whether the plaintiff herself had consented to the sale and delivery of the property to the defendant. This view of the court was first indicated in his ruling on defendant's motion for a directed verdict at the close of plaintiff's evidence. The ground of the ruling was there stated as follows:

"The evidence further shows that, or at least it is a question of fact at this time as to whether or not this property was taken *without the consent of the plaintiff*; she states as a witness that she was unwilling to have the property so taken."

It was also indicated by instruction No. 10, as follows:

"10. If you should find from the evidence that at the time the defendant discussed with Boyd Brayman and Ima Brayman, the question of his taking the property involved in this suit, that the defendant intended to take said property regardless of the consent of said Boyd Brayman *and Ima Brayman,* and so informed said parties, then you are instructed that the defendant did not have a right to take such property, and that he would be liable for the value thereof."

The foregoing was the only instruction which permitted recovery by the plaintiff. By instruction No. 11 the court withdrew from the jury the issue of alleged conspiracy and of the alleged want of freedom of action on the part of Boyd. The evidence of the plaintiff herself discloses that Boyd and his brother delivered on March 8, 1930, all of the property in controversy from the farm occupied by Boyd to the farm occupied by the defendant. The two farms were across the road from each other, and the houses were a quarter of a mile apart. The effect of instruction No. 10 was to say to the jury that the consent of the wife, Ima Brayman, together with that of her husband, was essential to a valid sale by Boyd to his father. Section 11758 provides as follows:

"11758. Absconding debtor. When a debtor absconds and leaves his family, such property as is exempt to him under this chapter shall be exempt in the hands of his wife and children, or either of them."

The foregoing has no application whatever to the case at bar. There was no absconding on the part of Boyd at the time the sale was made. The word "abscond" as used in this section was construed by us in an early day in Malvin v. Christoph, 54 Iowa 562, 7 N. W. 6. We held that to "abscond," therefore, in a legal sense, means to elude; to hide; to conceal oneself clandestinely, with intent to avoid legal process. Concealment is but a phase of absconding. It is with the purpose of defeating or delaying creditors by avoiding service of process.

The husband had not absconded. He was still the head of his family and still had the dominion of his property. His own good faith in the matter is undisputed. This statute was construed by us in Grover v. Younie, 110 Iowa 446, 81 N. W. 684, 686. We said:

"The statute confers on the wife no interest other than she had in her husband's property, nor does it deprive him of the right of selecting that which shall be held as exempt. If he err in judgment or by design, the law gives her no remedy. If, under the construction given, he might mortgage all save a worthless team, as suggested by the appellee, under that contended for he might also make such a choice thereafter. Under either he may deprive his family of the benefit of exemptions by sale or gift, or by failure to select property when required to do so by an officer about to make a levy. The object of this statute is not to wrest from the head of the family the control of exempt property, but to somewhat restrict it, by requiring the concurrence of the wife before it can be *incumbered*."

We had the question before us again in Holdorf v. Holdorf, 186 Iowa 1193, 171 N. W. 42, 43. We there said:

"Generally speaking, the exempt character of the property does not destroy or interfere with the right of the debtor to sell or dispose of it, the presumption being that, so long as he remains the actual head of the family with the wife and infant children, he will make proper provision for their support, or if the property sold be necessary for their support he will replace it."

We think there is no gainsaying the proposition that on March 8, 1930, the plaintiff's husband had the undoubted power to sell the exempt property, and that it was not essential to the validity of

such a sale that the wife should consent to it. The plaintiff herself testified as follows:

"Boyd came back from Clarinda about March 8th. He and one of his brothers took the pigs, cows and calves over to William Brayman's farm across the road. They took everything over there. I don't remember whether they took them over there while he was in jail or not. Boyd was in jail two or three days and then he got out on bond, and he helped to take the things across the road. When I say those things, I mean the cows and calves. The cows and calves were part of the property taken across to William Brayman's place. He took the pigs and everything. * * *

"Boyd helped to take those things across the road to his father's place. That was after the three of us had that talk. Boyd wanted to know if his father wouldn't give me a small amount, ten or fifteen dollars a month, for the use and keep of that property if he was going to take them over there, so that I could support myself and children—have some way of living until he got back.

"Q. Now, all I am asking for is the conversation. Did you agree or did you authorize or say anything to Mr. Brayman about his taking them across the road; did you tell him he could take it, or—A. No, I objected to him taking it.

"Q. What did you say when you objected? A. I said I thought he ought to give me so much a month if he was going to take all that."

It appears very clearly upon this record that there was no infirmity in the contract between father and son. Their relations and conduct to each other were sympathetic. Nearly all the property involved in the controversy had been given by the father to the son two years before. The record discloses no reason for challenging the good faith of either of them. The record discloses no legitimate ground of recovery.

The judgment below must accordingly be reversed.

All Justices concur.