727 F.2d 315
 John F. BRITTON
v.
The HOWARD SAVINGS BANK, a New Jersey Banking Corporation,
Joseph Rascio, individually and trading as Agents Auto
Recovery Service, a proprietorship, Joseph Rascio and Mary
Lou Rascio, a/k/a Mary Lou De Iesso, individually and
trading as Agents Auto Recovery Service.
Appeal of The HOWARD SAVINGS BANK.
 No. 83-5216.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
on Jan. 23, 1984.
 Decided Feb. 9, 1984.
 
 Crummy, Del Deo, Dolan & Purcell, Newark, N.J., John A. Ridely, Newark, N.J., of counsel; Frederick C. Kentz, III, Faith A. Hamstra, Newark, N.J., on brief, for The Howard Sav. Bank.
 Philip M. Saginario, Paterson, N.J., for Agents Auto Recovery Service, Joseph Rascio and Mary Lou Rascio, a/k/a Mary Lou De Iesso.
 Before GIBBONS and BECKER, Circuit Judges and ATKINS, District Judge*.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 The Howard Savings Bank (Howard) appeals from an order, in an action still pending in the district court, denying its motion to vacate a stay of proceedings so as to permit it to move for a writ of attachment. Howard, a defendant in the pending action, sought the writ to attach property of Joseph Rascio and Mary Lou Rascio, against whom it asserts a cross-claim. This court granted an injunction pending appeal preventing the Rascios from removing from the district of New Jersey the property sought to be attached. The Rascios have moved before this court to dissolve that injunction. We deny that motion, and we reverse the district court's order.
 
 I.
 
 2
 Agents Auto Recovery Service, a firm operated by Joseph and Mary Lou Rascio, repossesses automobiles financed by lenders such as Howard. The firm repossessed an automobile operated by John Britton. Britton filed a diversity action in the United States District Court for the District of New Jersey charging Howard with conversion, false imprisonment, and assault and battery in connection with that repossession. Because Agents Auto had undertaken by contract to defend and indemnify Howard, and to carry comprehensive liability insurance against claims arising out of its repossession business, Howard cross-claimed against the Rascios. Prior to the filing of Britton's diversity suit, however, Howard had already commenced suit in the Superior Court of New Jersey to enforce the terms of a settlement agreement between Britton and Howard. On January 24, 1983, the district court stayed the diversity action except for the limited purpose of discovery to ascertain the citizenship of the Rascios.
 
 
 3
 After entry of the January 24 stay order, Howard sought unsuccessfully to serve process on the Rascios. While they were avoiding process, and avoiding negotiations with Howard's representatives, Howard became aware that it had issued four certificates of deposit in the name of Mary Lou DeIesso, and that Mary Lou DeIesso and Mary Lou Rascio were one and the same. Fearing that the Rascios were about to remove themselves and their property from the State of New Jersey, Howard moved on March 22, 1983 for a writ of attachment, and for an order lifting the stay of proceedings, for the limited purpose of permitting the attachment of the four certificates of deposit.
 
 
 4
 The district court denied these motions, expressing "serious doubts" about the validity of New Jersey's attachment statutes in light of Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). This appeal, and the injunction pending appeal, followed.
 
 II.
 
 5
 New Jersey law provides two statutory grounds for attachment pertinent to Howard's cross-claim:[1]
 
 
 6
 a. Where the facts would entitle plaintiff to an order of arrest before judgment in a civil action ...; or
 
 
 7
 b. Where the defendant absconds or is a nonresident of this state, and a summons cannot be served on him in this state ....
 
 
 8
 N.J.Stat.Ann. Sec. 2A:26-2(a), (b) (West 1952). An order of arrest (or capias ad respondendum ) "shall issue in an action founded on a contract, express or implied ... when the proof establishes ... [t]hat defendant is about to remove any of his property out of the jurisdiction of the court ... with intent to defraud his creditors; or ... [t]hat defendant fraudulently contracted the debt or incurred the demand." N.J.Stat.Ann. Sec. 2A:15-42(a), (d) (West 1952).
 
 
 9
 A. Howard Would be Entitled to an Order of Arrest
 
 
 10
 The record on which the district court acted consisted of the pleadings and four affidavits, which establish two bases on which Howard would be entitled to a capias ad respondendum.
 
 1. Removal of assets with intent to defraud
 
 11
 A process server employed by Howard attested that he had attempted to serve Joseph and Mary Lou Rascio on five occasions, each time unsuccessfully, at the address identified in Howard's records as their residence. On the fifth occasion he learned that a new tenant occupied the apartment. Britton's attorney also attested to difficulties in serving Agents Auto by mail.
 
 
 12
 A Howard loan officer attested that Joseph Rascio had informed him that Rascio "and his wife expected to be leaving New Jersey shortly to operate their business on the west coast and in the midwest." App. at 32. The loan officer attested further that Rascio informed him that one of his employees "had already left and was working in California," that Agents Auto "was no longer in the business of auto repossession," and that Agents Auto "had absolutely no comprehensive liability insurance." App. at 33.
 
 
 13
 Another Howard employee attested that Mary Lou DeIesso spoke to her at the Bank "and indicated that she would be withdrawing the monies upon maturity of the Certificates of Deposit." App. at 46. This same employee attested that Joseph Rascio and Mary Lou DeIesso had sought a mortgage from Howard under the name Agents Auto Recovery Service, leading her to believe that Joseph Rascio and Mary Lou DeIesso are the principals in the business conducted under that trade name.
 
 
 14
 Aside from these four affidavits, there was no other record evidence before the district court.[2] They establish prima facie that the Rascios, faced with a lawsuit for which they should have planned by obtaining comprehensive liability insurance, sought to remove assets from New Jersey with intent to defraud Howard. N.J.Stat.Ann. Sec. 2A:15-42(a) (West 1952).
 
 2. Fraudulent contract
 
 15
 There is also uncontradicted record evidence that in order to induce Howard to hire Agents Auto to repossess motor vehicles, the Rascios undertook to keep in full force and effect comprehensive general liability insurance of not less than $1 million and to indemnify and hold harmless Howard from all liability arising from the actions of Agents Auto. The contract expressly provided that the liability insurance "will include protection for the indemnity provisions of this contract." App. at 38. Prima facie, the Racios induced Howard to give Agents Auto the task of repossessing the automobile operated by Britton by virtue of Howard's reliance on the existence of insurance coverage that Agents did not obtain. Thus, Howard's moving papers also satisfied N.J.Stat.Ann. Sec. 2A:15-42(d) (West 1952).
 
 
 16
 B. Howard Was Entitled to Attach Property of an Absconding Debtor
 
 
 17
 A separate ground for a writ of attachment is provided under New Jersey law for the property of an absconding debtor. An "absconding debtor" is one who, "with intent to defeat or delay the demands of his creditors, conceals or withdraws himself from his usual place of residence beyond the reach of process." Doughnut Corp. v. Tsakirides, 121 N.J.L. 136, 137, 1 A.2d 467, 469 (1938), quoting Stafford v. Gaiser, 57 N.J.L. 574, 578, 32 A. 7, 8 (1894). The debtor need not leave the state:
 
 
 18
 It is not necessary that [the debtor] depart from the limits of the state in which he has resided.... [A]ll the law requires, in order to constitute an absconding debtor, is that he shall put himself in such a position that he can and does successfully evade the service of process.
 
 
 19
 Stafford v. Gaiser, 57 N.J.L. at 578, 32 A. at 8. There is in the affidavits referred to a prima facie case of successful evasion of service of process, both of Britton and of Howard. Thus, Howard's moving papers establish its entitlement to a writ of attachment under N.J.Stat.Ann. Sec. 2A:26-2(b) (West 1952) as well.
 
 
 20
 C. Howard's Moving Papers Satisfied the New Jersey Court Rules Respecting Attachments
 
 
 21
 While the substantive grounds for attachment in New Jersey are statutory, the procedural requirements are specified in New Jersey Court Rule 4:60. In response to the decision in Fuentes v. Shevin, 407 U.S. 67, 97, 92 S.Ct. 1983, 2002, 32 L.Ed.2d 556 (1972), requiring an adjudication establishing the probable validity of an underlying claim before a debtor's property may be attached, the New Jersey Supreme Court amended Rule 4:60-5(a) to provide that a writ of attachment shall issue upon a court order.
 
 
 22
 The motion shall be granted only upon the court's finding, based on the moving papers, any opposing affidavits which may have been filed, and any testimony taken ... that (1) there is a probability that final judgment will be rendered in favor of the plaintiff; (2) there are statutory grounds for issuance of the writ; and (3) there is real or personal property of the defendant at a specific location within this state which is subject to attachment.
 
 
 23
 N.J.Ct.R. 4:60-5(a). The rule contemplates three days notice, except that:
 
 
 24
 An order for issuance of writ of attachment without notice to the defendant may be entered by the court ... if the defendant is about to abscond or if the court finds from specific facts shown by affidavit or verified complaint that the giving of such notice is likely to defeat the execution of the writ.
 
 
 25
 N.J.Ct.R. 4:60-5(b).
 
 
 26
 Howard's moving papers establish that the Rascios were about to abscond, that there are statutory grounds for issuance of the writ, and that there is property in New Jersey subject to attachment.[3] The only remaining requirement is a showing that there is a probability that judgment will be rendered in its favor.
 
 
 27
 The contract between Howard and Agents Auto unambiguously provides that Agents Auto shall indemnify, defend, and save Howard harmless for any liability to third parties arising from the conduct of employees of Agents Auto. It unambiguously provides, further, that Agents Auto shall carry $1 million in comprehensive liability insurance "which will include protection for the indemnity provisions of this Contract." App. at 38. Howard's affidavits establish that Agents Auto is not defending it from Britton's claim, and that Agents Auto did not obtain the liability insurance policy specified in the contract. The construction of an unambiguous written document is in New Jersey a matter of law. Bedrock Foundations v. George H. Brewster & Sons, Inc., 31 N.J. 124, 133, 155 A.2d 536, 541 (1959); see Suburban Transfer Service, Inc. v. Beech Holdings, Inc., 716 F.2d 220, 224 n. 6 (3d Cir.1983). The contract, as a matter of law, requires that the Rascios defend Howard against the Britton claim, and to indemnify Howard against any liability which Britton might establish. The Rascios undertook to repossess the Britton vehicle knowing that Howard relied on insurance for that undertaking, which was not provided. Thus there is, as a matter of law on this record, a clear likelihood of success on the merits. Howard's moving papers satisfied both the New Jersey statutes and the New Jersey court rule respecting issuance of a writ of attachment.
 
 
 28
 D. The District Court's Reasons for Refusing to Issue the Writ are Inadequate
 
 
 29
 The district court refused to issue the writ because of "serious doubts of the validity of New Jersey's attachment statutes" in the wake of Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1979). In Shaffer, the Supreme Court held that the assertion of quasi-in-rem jurisdiction by attachment of property must as a matter of due process conform to the minimum contacts standard of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). See 433 U.S. at 212, 97 S.Ct. at 2584. New Jersey Court Rule 4:60-5(a) clearly acknowledges the Shaffer rule by providing, in an amendment adopted in the wake of Shaffer, that "[a] writ of attachment shall issue only in cases where the defendant is subject to the exercise of jurisdiction by the State consistent with due process of law." Nothing in the record suggests that the exercise in New Jersey of adjudicatory authority over the dispute between Howard and the Rascios would violate due process. To the contrary, business cards and advertisements in the record reveal extensive business contacts in New Jersey on the part of the Rascios, see App. at 35-36, and the cross-claim grows out of a contract made in New Jersey for the performance of services on behalf of a New Jersey bank. Thus, the basis on which the district court refused to issue the writ of attachment was completely without merit.
 
 III.
 This Court has Appellate Jurisdiction
 
 30
 We have set forth a discussion of the requirements under New Jersey law for issuance of a writ of attachment before turning to the question whether the March 23, 1983 order denying the writ is appealable. We did so for two reasons. First, the appellees have not on appeal contended that we lack appellate jurisdiction. Second, an understanding of the New Jersey requirements for the issuance of a writ of attachment is required for determining our jurisdiction under 28 U.S.C. Sec. 1291 (1976).
 
 
 31
 In Swift & Co. Packers v. Compania Colombiana Del Caribe S.A., 339 U.S. 684, 688-89, 70 S.Ct. 861, 864-65, 94 L.Ed. 1206 (1950), the Supreme Court held that an order dissolving a writ of attachment in admiralty was appealable as a collateral order within the meaning of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Justice Frankfurter observed:
 
 
 32
 Appellate review of the order dissolving the attachment at a later date would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible.... Under these circumstances the provision for appeals only from final decisions in 28 U.S.C. Sec. 1291 should not be construed so as to deny effective review of a claim fairly severable from the context of a larger litigious process.... The situation is quite different where an attachment is upheld pending determination of the principal claim.... In such a situation the rights of all the parties can be adequately protected while litigation on the main claim proceeds.
 
 
 33
 339 U.S. at 689, 70 S.Ct. at 865 (citations omitted). What motivated the court to treat the dissolution of an attachment as immediately reviewable was the immediate destruction, pendente lite, of the security provided by attachment of property for whatever judgment might ultimately be recovered. Loss of that security pendente lite could never, after final judgment, be restored. Its destruction pendente lite is a matter entirely distinct from the merits of the dispute, although bearing on the likelihood that a judgment will be paid. Patently, the Court's reasoning in Swift & Co. Packers is as applicable to the pendente lite refusal to issue a writ of attachment as it is to the dissolution of such a writ. Thus, Swift & Co. Packers controls unless subsequent developments have obsoleted its authority.
 
 
 34
 One such development which we have considered is the amendment in 1973 of New Jersey Court Rule 4:60-5(a). That amendment, enacted in response to Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), requires that before issuing a writ of attachment, the court find that there is a probability that final judgment will be rendered in the plaintiff's favor. See 407 U.S. at 97, 92 S.Ct. at 2002. Rule 4:60-5(a), as amended, does require a preliminary finding of probability of success on the merits, and thus to some extent requires consideration of the merits. In Coopers & Lybrand v. Livesay, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), the Supreme Court, rejecting the "death knell" doctrine as a basis for section 1291 appeals from orders denying class-action certifications, observed that to come within the class of collaterally final orders under Cohen,
 
 
 35
 the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.
 
 
 36
 437 U.S. at 468, 98 S.Ct. at 2458 (emphasis supplied). The March 23, 1983 order obviously determined conclusively that there would be no pendente lite security for any ultimate judgment. Equally obviously, the absence of pendente lite security will, if no attachment issues, be effectively unreviewable after final hearing, for if Howard obtains a judgment against the Rascios, an appeal by it, from the denial of the motion for an attachment, would at that point be a futile gesture, equally as ineffective as an application for a writ of execution. Thus, we consider the narrow question whether the italicized reference in the quote from Coopers & Lybrand should be construed as a bar to review because, under the New Jersey Rule and Fuentes v. Shevin, the trial court must give some limited degree of attention to the merits of the claim of the attaching plaintiff.
 
 
 37
 We hold that Coopers & Lybrand made no change in the Swift & Co. Packers rule. What is "separate from the merits" for purposes of the collateral order doctrine is the separate claim for security pendente lite. That, after all, was the nature of the claim addressed in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), a claim for security for costs in a shareholders' derivative action. Denying the motion for such security in Cohen had the same kind of effect on a statutory right to pendente lite security as did the denial of Howard's statutory right to pendente lite security in attached property. The Coopers & Lybrand Court nowhere suggests that it intended to place claims for such pendente lite security outside section 1291 merely because the right to such security depends in part on a preliminary determination of probable success on the merits of the underlying claim. The claim for security pendente lite is separate because it simply will not survive the litigation.
 
 
 38
 This reading of the Court's language in Coopers & Lybrand is consistent with the Supreme Court's recent treatment of issues of finality both under 28 U.S.C. Sec. 1257 (1976) and under 28 U.S.C. Sec. 1291 (1976). The Court has consistently emphasized that the most significant issue with respect to appealability of collateral orders is their effect on parties pendente lite, rather than the relationship of issues already decided to the ultimate merits. See, e.g., Local No. 438 Construction & General Laborers' Union v. Curry, 371 U.S. 542, 546, 83 S.Ct. 531, 534, 9 L.Ed. 514 (1963) (order issuing injunction prohibiting labor picketing appealable; whether injunction should have issued depended on whether complaint made out an "arguable violation" of NLRA); Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 486, 95 S.Ct. 1029, 1041, 43 L.Ed.2d 328 (1975) (challenged state statute would affect first amendment rights pendente lite; determination whether federal issue had been decided "arguably wrongly" incorporated in finality analysis); National Socialist Party v. Village of Skokie, 432 U.S. 43, 44, 97 S.Ct. 2205, 2206, 53 L.Ed.2d 96 (1977) (per curiam) (order refusing to stay injunction would affect first amendment rights pendente lite; whether stay would issue incorporates consideration of likelihood of success); Abney v. United States, 431 U.S. 651, 656-63, 97 S.Ct. 2034, 2038-42, 52 L.Ed.2d 651 (1977) (trial would subject defendant to violation of double jeopardy rights pendente lite; double jeopardy issue requires analysis of whether each crime requires proof of fact not required by other); Helstoski v. Meanor, 442 U.S. 500, 506-08, 99 S.Ct. 2445, 2448-49, 61 L.Ed.2d 30 (1979) (trial would subject Congressman to possible violation of speech and debate clause rights pendente lite; whether speech protected requires analysis of content of speech and circumstances surrounding its making). This court also has, in determining finality under section 1291, focused on the irreparability of the loss of a claimed right pendente lite. Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 195-96 (3d Cir.1983) (denying enforcement of forum selection clause would subject party to trial in forum other than that contracted for; factors may involve some reference to merits); Chrysler Corp. v. Fedders Corp., 670 F.2d 1316, 1318 n. 2 (3d Cir.1982) (order vacating notice of lis pendens would be effectively unreviewable after final judgment).
 
 
 39
 Thus we have no doubt, as the Rascios apparently concede, that Howard's appeal is within our jurisdiction under section 1291.[4]
 
 IV.
 
 40
 Since on this record Howard's motion for a writ of attachment, which satisfied the New Jersey statutes and court rules, should have been granted, the judgment appealed from will be reversed.
 
 
 
 *
 Hon. C. Clyde Atkins, United States District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Fed.R.Civ.P. 64 makes these state grounds applicable in the district courts. Rule 64 provides:
 At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought....
 
 
 [2]
 In their brief on appeal, the Rascios refer to a variety of extra-record materials purporting to support an inference that the certificates of deposit are the separate property of Mary Lou DeIesso, and that Joseph Rascio is the sole principal in Agents Auto. These assertions were unsworn, and no motion has been made to supplement the record. Thus, they may not be considered in passing on the propriety of the order appealed from. See Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1975) (matters not before district court will not be considered on appeal); Halderman v. Pennhurst State School & Hospital, 673 F.2d 628, 639 (3d Cir.1982) (in banc) (same); United States v. Gazda, 499 F.2d 161, 164 (3d Cir.1974) (assertions of appellate counsel not part of record on appeal)
 
 
 [3]
 The property consists of certificates of deposit issued by Howard. That the property sought to be attached is in Howard's possession is not a reason for refusing to issue the writ. United States Steel Corp. v. Commercial Contracting Corp., 168 F.Supp. 375, 378-79 (D.N.J.1958)
 
 
 [4]
 To the extent that Sobol v. Heckler Congressional Comm., 709 F.2d 129, 130-32 (1st Cir.1983) (per curiam) may appear to be contrary, we decline to follow it